# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN MELNICK, | : | CIVIL ACTION NO. **3:CV-04-2689** |
| Plaintiff | : | (Judge Caputo) |
| vs. | : | (Magistrate Judge Blewitt) |
| SCOTT TOWNSHIP, et al., | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

**I. Background.**

On December 14, 2004, Plaintiff, John Melnick, a resident of Clarks Summit, Pennsylvania, filed a Complaint pursuant to 42 U.S.C. §1983 and § 1985.[1] (Doc. 1). Plaintiff is proceeding through counsel. Plaintiff paid the filing fee. Named as Defendants are: Scott Township; David D. Davison and Scott Sayer, Scott Township Police Officers ("PO Defendants"); and George and Charlene Cottell, husband and wife ("Cottell Defendants). (Doc. 1, pp. 2-3).[2] Plaintiff sues all of the Defendants in their individual and official capacities. This Court has jurisdiction pursuant to 28 U.S.C. § 1343 and § 1331.

The Plaintiff raises claims under § 1983 and § 1985(3) (Count I), as well as state law claims (Counts II-IV). As relief, the Plaintiff requests monetary and punitive damages. (Doc. 1).

---

1. Plaintiff is complaining about conduct which all transpired in Lackawanna County, Pennsylvania, located in the Middle District of Pennsylvania. All of the parties are located in the Middle District of Pennsylvania. (Doc. 1, ¶ 14.). Thus, venue of this case is proper in the Middle District of Pennsylvania. Under 28 U.S.C. § 1391(b)(1) and (2), venue is proper in the Middle District of Pennsylvania, since this is the judicial district where all of the Defendants reside and "in which a substantial part of the events or omissions giving rise to the claim occurred."

2. The two latter Defendants, Mr. & Mrs. Cottell, as will be discussed, are not state actors.

On January 21, 2005, Defendants Scott Twp. and the PO Defendants jointly filed their Answer to the Complaint. (Doc. 3). On March 21, 2005, the Cottell Defendants filed a Motion to Dismiss the Complaint under Fed. R. Civ. P. 12 (b) (6). **(Doc. 17)**. This Motion has been briefed by the parties. (Docs. 21, 23 & 24).[3]

## II. Allegations of Complaint.

Plaintiff alleges that on October 1, 2003, the Cottell Defendants filed a petition for preliminary injunction with the Lackawanna County Court of Common Pleas ("LCCCP") against Plaintiff and his wife, who owned the adjoining property to Cottell Defendants' property, without giving Plaintiff notice or a hearing,. LCCCP issued a restraining order and enjoined Plaintiff and his wife from blocking, with their vehicle, a driveway which was the subject of an ongoing property dispute between Plaintiff and Cottell Defendants. (Doc. 1, ¶'s 15.-17.). Subsequently, on the same day, the Cottell Defendants notified Defendants Davison and Sayer, police officers with the Scott Twp. Police Dept., that Plaintiff was violating the LCCCP's restraining order. The PO Defendants went to Plaintiff's residence, placed him in police custody, and took him to the Lackawanna County Courthouse. Plaintiff remained in police custody for four (4) hours. The PO Defendants did not charge Plaintiff with any crime and did not arrest him. (*Id.*, ¶'s 18.-21.).

The Plaintiff avers that as a result of conduct of the Defendants, he was caused to suffer the indignity of discrimination, humiliation, shame and outrage, manifested in emotional distress. (*Id.*, ¶ 22.). Plaintiff also claims to have suffered economic damages, as well as mental pain and

---

3. This case has been assigned to the undersigned for pretrial matters.

suffering, loss of enjoyment to life, and claims that he was denied his property during the four (4) hours that he was improperly imprisoned.  (*Id*., ¶'s 23.-25.).

Count I asserts claims under § 1983 and § 1985.  Count II raises a state law claim of false imprisonment.  Count III asserts a cause of action for intentional infliction of emotional distress.  Counts II & III specifically mention only the PO Defendants.  The final count, Count IV, alleges negligence against Scott Twp. in hiring, training and supervising the PO Defendants.

### III. Motion to Dismiss Standard.

When evaluating a pleading for failure to state a claim, the court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988).  A complaint that sets out facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.  *Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976).

### IV. Discussion.

*A. Claim under § 1985*

The Plaintiff argues that the Cottell Defendants, on October 1, 2003,  improperly sought and obtained a preliminary injunction against him and, by contacting Scott Twp. Police,  they then caused Plaintiff to be taken into police custody for four (4) hours, despite never being charged with a crime or with violating the improper preliminary injunction.  The Plaintiff states that the Cottell

Defendants improperly obtained the preliminary injunction, since he did not receive notice and a prior hearing to present a defense. (Doc. 23, p. 2).  With respect to his § 1985 claim, the Plaintiff states that a conspiracy existed between the Cottell Defendants and the PO Defendants, who were state actors,  to engage in conduct that violated his Fifth Amendment and Fourteenth Amendment rights.  In particular, Plaintiff states that within one hour of receiving the improper preliminary injunction, the Cottell Defendants informed him of the Order and contacted the Scott Twp. Police. According to Plaintiff, the PO Defendants responded to the Cottell's call and immediately placed him in handcuffs and took him to the County Courthouse, where he remained in their custody for four (4) hours.   As a result of this conspiracy, the Plaintiff claims that he suffered serious injuries such as discrimination, embarrassment, emotional distress, and economic losses.  (*Id*., pp. 2-3).[4]

In their Brief, the Cottell Defendants argue that Count I fails to mention them as being involved in any alleged wrongful conduct with the PO Defendants. (Doc. 21, p. 3).  While Count I does not specifically mention the Cottell Defendants, it does incorporate by reference ¶'s 1.-25. of the pleading, which as discussed above, contain averments against these Defendants.   (Doc. 1, ¶ 26.).  The Cottell Defendants also argue that the Plaintiff's § 1985 claim fails, in that it does not allege any class based invidious discriminatory animus.  (Doc. 21, pp. 3-4).  Since there is no class based discrimination alleged in Count I, the Cottell Defendants state that the conspiracy claim against them should be dismissed.

---

4.  For present purposes, as stated, we must accept the Plaintiff's allegations as true.

The Plaintiff responds in his Brief that the class in the class-based animus requirement of a § 1895 claim, includes not only the historically protected classes, but it also includes the classes who assert the deprivation of fundamental rights, as he is in this case. (Doc. 23, p. 4). The Plaintiff then states that he has plead that the Cottell Defendants engaged in conduct, as discussed above, that caused his fundamental rights under the Fifth Amendment and Fourteenth Amendment to be violated. (*Id.*, p. 5).

We agree with the Defendants and find that Plaintiff's claims under § 1985(3) against them should be dismissed, since he is not a member of a protected class. As Defendants correctly state in their Reply Brief, the Plaintiff does not make any allegation of class based bias. (Doc. 24, p. 3). Plaintiff states that his assertion of the deprivation of fundamental rights is sufficient to make him part of a protected class for purposes of §1985(3). Plaintiff avers that he has alleged a class based discriminatory animus, in that the Cottell Defendants entered into a conspiracy with the PO Defendants to violate his fundamental rights. (Doc. 23, p.5). The Plaintiff then states that since he is part of a class protected by § 1985(3) by virtue of his allegations of a conspiracy that caused a violation of his fundamental rights, the Defendants' Motion to Dismiss Count I should be denied. As will be discussed below, we disagree that Plaintiff is part of a protected class.

The Court, in *Garrett v. Nesbitt*, 1998 WL 531841 at * 3 (E.D. Pa.), stated,

> In order to state a claim for violation of § 1985(3), a plaintiff must allege four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *See United Brotherhood of Carpenters and*

5

>   *Joiners of Am. v. Scott*, 463 U.S. 825, 828-29, 103 S.Ct. 3352,
>   77 L .Ed. 2d 1049 (1983).

The Court in *Williams v. Brotherhood Mission's Board of Trustees,* 2004 WL 503490 (E.D. Pa.) * 3, stated as follows:

>   In *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790,
>   29 L.Ed.2d 338 (1971), the Supreme Court established
>   the criteria for measuring whether a complaint states a cause
>   of action under § 1985(3):
>>    "To come within the legislation a complaint must allege
>>    that the defendants did (1) 'conspire or go in disguise
>>    on the highway or on the premises of another' (2) 'for the
>>    purpose of depriving, either directly or indirectly, any
>>    person or class of persons of the equal protection of the laws,
>>    or of equal privileges and immunities under the laws.'  It must
>>    then assert that one or more of the conspirators (3) 'did, or
>>    caused to be done, any act in furtherance of the object of
>>    [the] conspiracy, whereby another was (4a) injured in
>>    his person of property' or (4b) 'deprived of having and
>>    exercising any right or privilege of a citizen of the
>>    United States.'"
>   403 U.S. at 102-103; *Lake v. Arnold*, 112 F.3d 682 91997).  In
>   *Griffin*, the Supreme Court clarified that the reach of § 1985(3)
>   is limited to private conspiracies predicated on "racial, or perhaps
>   otherwise class based, invidiously discriminatory animus." *Id.*
>   at 102.  The Court strictly construed the requirement of
>   classbased invidious animus in *United Brotherhood of Carpenters
>   and Joiners of America, Local 610 v. Scott*, 463 U.S. 825,
>   103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), finding that commercial
>   and economic animus could not form the basis for a § 1985(3)
>   claim.  Read together, these two cases establish that in order
>   to state a claim under 42 U.S.C. § 1985(3), a plaintiff must
>   allege: (1) a conspiracy; (2) motivated by a racial or class based
>   discriminatory animus designed to deprive, directly or indirectly,
>   any person or class of persons to the equal protection of the laws;
>   (3) an act in furtherance of the conspiracy; and (4) an injury
>   to person or property or the deprivation of any right or privilege
>   of a citizen of the United States. *Id.* at 828-29; *Griffin*, 403
>   U.S. at 102-103.  The vitality of this analysis was reaffirmed
>   in *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 628,

113 S.Ct. 753, 122 L.Ed.2d 34 (1993).

As the Supreme Court in *Griffin* indicated, § 1985(3) is limited to private conspiracies. 403 U.S. at 102. Thus, Plaintiff's attempt to raise a claim under § 1985(3) against the Cottell Defendants, who are not state actors, based on their alleged conspiracy with the PO Defendants meets this hurdle.

However, the Plaintiff has not shown that he is a member of a protected class under § 1985(3). The *Williams* Court discussed the requirement of establishing membership of a protected class for a § 1985(3) claim and stated:

> The Supreme Court stated in *Griffin* that the allegation of conspiracy under § 1985(3) requires a showing of "some racial or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin*, 403 U.S. at 102; *see Burnes-Toole v. Byrne*, 11 F.3d 1270 (5th Cir. 1994) (noting that subsequent lower court decisions have not delineated the outside boundaries of the classes protected by § 1985(3) (citations omitted). Despite the ambiguity in § 1985(3) jurisprudence, the Third Circuit has concluded that both the mentally retarded and women are afforded the protection of § 1985(3). [FN4] *Novotny; Lake*, 112 F.3d at 688; *see also Natale v. Schwartz*, 1999 WL 1134535, *7 (E.D. Pa. Dec. 10, 1999) (noting that the logic applied by the Third Circuit in *Lake* extends easily to national origin, provided that "there has been historically pervasive discrimination against people of a particular national origin"); *but see Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.,* 172 F.3d 238 (3d Cir. 1999) (refraining from deciding that § 1985 protects the disabled in general).
>
> > FN4. *See Trautz v. Weisman*, 819 F.Supp. 282, 291 (S.D. N.Y. 1993) ("The best that can be said of § 1985(3) jurisprudence thus far is that it has been marred by fits and starts, plagued by inconsistencies, and left in flux by the Supreme Court.).
>
> In holding that women fall within the class of individuals protected by § 1985(3), the court wrote that "[i]n determining

7

> the applicability of § 1985(3) . . . [the] initial inquiry must be
> whether the actions which form the basis for [the] case are the
> offspring of a 'class-based invidiously discriminatory animus'
> within the meaning of the *Griffin* test." *Novotny*, 584 F.2d at
> 1241.  This court has expressed a commitment to equality,
> in order "to ensure that private conspirators do not strip other
> citizens of the equal protection of the laws" particularly "those
> discrete and insular minorities who have traditionally borne
> the brunt of prejudice in our society." *Lake*, 112 F.3d at 686
> *citing* Ken Gormley, *Private Conspiracies and the Constitution:
> A Modern Version of 42 U.S.C. Section 1985(3)*, 64 Tex.L.Rev.
> 527, 575 (1985).

*Williams, supra* at * 4.

We do not find that the Plaintiff has alleged any "class-based invidiously discriminatory animus" within the meaning of the *Griffin* test.  The Plaintiff does not cite to any recent Third Circuit case which has held that a person who asserts violations of fundamental rights is in a class protected by § 1985(3).  (Doc. 23, pp. 4-5).  Nor do we find, based on the above case law, that this Court should extend the coverage of § 1985(3) to such persons.  We fail to see how any person alleging violations of fundamental rights should be afforded the same protection under § 1985(3) as women, mentally disabled, minorities and religious groups.  Plaintiff claims a private conspiracy amongst the Cottell Defendants and the PO Defendants and, claims that he is in a protected class based on his assertion that these Defendants caused a violation of his fundamental rights.  We do not find that persons, such as Plaintiff is claiming, are part of "discrete and insular minorities who have traditionally borne the brunt of prejudice in our society." *Lake, supra,* 112 F. 3d at 686.  (Citation omitted).  Thus, we do not find that §1985 protects our Plaintiff against discrimination based on his

allegation that the Defendants violated his fundamental rights. Therefore, we shall recommend that the Plaintiff's claims under § 1985(3) against the Cottell Defendants be dismissed.[5]

*B. Claim under § 1983*

We also find that the Plaintiff has not sufficiently alleged a claim under § 1983 against the Cottell Defendants. In an action brought pursuant to 42 U.S.C. § 1983, the Plaintiff must prove the following two essential elements in order to state a claim:  (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Williams v. Bor. of West Chester, Pa.*, 891 F.2d 458, 464 (3d Cir. 1989); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior.  See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is also well settled in the Third Circuit that the defendant's personal involvement in alleged

---

5. The Plaintiff alternatively requests that if his § 1985 claim is insufficient, that he be permitted to amend his Complaint to include more specific facts against the Cottell. (Doc. 23, p. 5). However, since we find that as a matter of law, the Plaintiff 's § 1985 claim against the Cottell Defendants fails, and  we find futility of any amendment of this claim, we shall not recommend Plaintiff be granted leave to amend his pleading.    *See Forman v. Davis*, 371 U.S. 178, 182 (1982); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted).

constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence. Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. *See Rode*, 845 F.2d at 1208.

Plaintiff basically alleges that on October 1, 2003, the Cottell Defendants filed a petition for a preliminary injunction seeking to restrain him and his wife from blocking a driveway which was the subject of a property dispute between the respective parties. LCCCP granted the Defendants' petition without giving Plaintiff prior notice or a hearing, and issued a restraining Order as Defendants had requested. On the same day, the Cottell Defendants then notified the PO Defendants that the Plaintiff was violating the LCCCP's Order. The PO Defendants then took Plaintiff in custody and transported him to the Courthouse, where he remained for four (4) hours without ever being charged.

We find that while the Plaintiff has adequately alleged § 1983 claims against the PO Defendants and Scott Twp. Defendant, he has not stated a § 1983 claim against the Cottell Defendants. The Cottell Defendants were private citizens whom Plaintiff avers conspired with the PO Defendants to have him unlawfully arrested and detained in violation of his fundamental constitutional rights.   (Doc. 23, p. 5).

As discussed above, the Plaintiff has not stated an actionable claim under § 1985(3).[6] Further, since we find no private conspiracy is alleged against the Cottell Defendants, and they are not state actors, the Plaintiff's § 1983 claims against them are subject to dismissal.

*C.  Remaining State Law Claims*

Finally, we agree with the moving Defendants that the Plaintiff's remaining state law causes of action do not allege the personal involvement of the Cottell Defendants. The Complaint, as stated, does not even specifically mention the Cottell Defendants in these remaining state law claims. Count II raises a state law claim of false imprisonment. Count III asserts a cause of action for intentional infliction of emotional distress. Counts II & III specifically mention only the PO Defendants. Count IV alleges negligence against Scott Twp. in hiring, training and supervising the PO Defendants.

---

6. The Plaintiff, as discussed above, has failed to establish that he is a member of a protected class, and thus, his claim under § 1985 must fail as a matter of law.

*i. Count II False Imprisonment*

In his Brief, the Plaintiff argues that he has alleged that the Cottell Defendants engaged in a conspiracy with the PO Defendants to have him wrongfully arrested. (Doc. 23, p. 6). We concur with the Defendants that the Complaint is devoid of any such allegations. (Doc. 24, p. 4).

In Pennsylvania, a person is liable for false imprisonment when he causes the false arrest of another person. *Brockington v. City of Phila.*, 354 F.Supp. 2d 563, 571, n. 8 (E.D. Pa. 2005) (citation omitted). A false arrest under Pennsylvania law is defined as "1) an arrest made without probable cause or (2) an arrest made by a person without privilege to do so." *Id.* at 572, n. 10 (citations omitted). The "elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention." *Id.* (citation omitted). A detention is unlawful " if it is a consequence of a false arrest." *Id.*

In this case, the Plaintiff does not allege that the Cottell Defendants arrested him or that they detained him. Rather, he claims that the Cottell Defendants conspired with the PO Defendants to have him falsely arrested.

The Plaintiff fails to state a conspiracy claim against the Cottell Defendants, in that he does not allege an agreement between them and the PO Defendants to unlawfully arrest and detain him. The Plaintiff's second cause of action for false imprisonment, which does not even specifically mention the Cottell Defendants, is, at best, a vague conspiracy claim which allegedly "was done for the purpose of using legal process to accomplish a purpose for which it was not designed." (Doc. 1, ¶ 33.). However, as the Defendants contend, there are no allegations in the Complaint that they played any role in the PO Defendants' decision and actions of taking Plaintiff into custody,

12

to the Courthouse, and then detaining him there for four (4) hours.  In fact, the Plaintiff admits that LCCCP issued the restraining Order, albeit allegedly without due process.  The fact remains that the Plaintiff merely alleges that Cottell Defendants notified the PO Defendants about the Order of the Court and that the Plaintiff was in violation of it.  It is then alleged that the PO Defendants went to Plaintiff's residence and placed him in police custody.   (Doc. 1, ¶'s 17.-19.).

We find that Plaintiff's bare conclusory allegations of conspiracy against the Cottell Defendants are inadequate to allege a conspiracy claim.  *See Flanagan v. Shively*, 783 F. Supp. 922, 928-29 (M.D. Pa. 1992), aff'd. 980 F. 2d 722 (3d Cir. 1992), *cert. denied* 510 U.S. 829 (1993). "The Plaintiff's allegations [of conspiracy] must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives.  Bare conclusory allegations of 'conspiracy' … will not suffice to allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred."  *Id*. at 928.  The Plaintiff does not specify any role or agreement of the Cottell Defendants in the alleged plan to unlawfully arrest and detain him.

Therefore, we shall recommend that Count II against the Cottell Defendants be dismissed.

*iii.  Count III, Intentional Infliction of Emotional Distress*

The Plaintiff argues that after the Cottell Defendants improperly obtained an injunction Order against him, they conspired with the PO Defendants to have this improper injunction illegally enforced by the police. (Doc. 23, pp. 7-8).  The Plaintiff claims that the outrageous and extreme

13

conduct of the police in taking him into custody and detaining him for four (4) hours without charging him was the result of the stated conspiracy.

As discussed above, we find no conspiracy claim asserted against the Cottell Defendants in the Plaintiff's Complaint. Nor does the Plaintiff assert such a claim in his Count III. (Doc. 1, ¶'s 37.-41.). This Count does not specify any involvement by the Cottell Defendants with respect to the conduct of the PO Defendants after they were contacted by the Cottells. Thus, we shall recommend that Count III be dismissed against the Cottell Defendants.

*iv. Count IV Negligence*

Clearly, the Cottell Defendants had no involvement with Count IV as it is pled, *i.e.* Scott Twp. was negligent regarding the hiring, training and supervision of the PO Defendants, and it failed to have appropriate policies in place. The Plaintiff argues that Count IV should not be dismissed as against the Cottell Defendants since their conduct of improperly obtaining an injunction against him and then contacting the police to come to his home and unlawfully imprison him constitutes a negligence claim. (Doc. 23, pp. 8-9).

Count IV does not contain the allegations Plaintiff attributes to it in his Brief. (Doc. 1, ¶'s 43.-48.). We agree with the Cottell Defendants (Doc. 24, p. 5) that Count IV is based only on the alleged negligence of the Scott Twp. Defendant. Additionally, as stated, it is only alleged that LCCCP issued the restraining Order and the Cottell Defendants notified the Police Department of the Order and Plaintiff's violation of it. Thus, this Count should be dismissed as against the Cottell

Defendants.[7]

---

7. Count IV only asserts a claim of municipal liability as against Defendant Scott Twp. Plaintiff's allegations in Count IV of the Complaint are sufficient to establish a failure to train claim against the Twp., since the Plaintiff has claimed the lack of any policies or practices issued by the Police Dept. which led to the alleged violation of his constitutional rights. When a claim against a municipality or governmental entity such as Scott Twp. is based on Section 1983, the entity can only be liable when the alleged constitutional violation implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018 (1978). A governmental custom for purposes of § 1983 is defined as "such practices of state officials...[as are] so permanent and well-settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691. Custom can be shown by evidence of knowledge and acquiescence by high-level policy-makers. *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989). The court must then inquire "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). The policy must be the "moving force" behind the constitutional violation. *Cornfield v. Consolidated High Sch. Dist. No. 230*, 991 F.2d 1316 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) (plurality opinion)).

"A plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between the execution of the policy and injuries suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). The law is clear that liability will not be imposed under § 1983 on a *respondeat superior* or vicarious liability theory. *See Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991).

**V. Recommendation.**

Based on the foregoing, it is respectfully recommended that the Cottell Defendants' Motion to Dismiss **(Doc. 17)** be granted and that all of the Plaintiff's claims against these Defendants be dismissed, and that these Defendants be dismissed. It is further recommend that this case be remanded to the undersigned for further proceedings.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: May 12, 2005**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN MELNICK, | : | CIVIL ACTION NO. **3:CV-04-2689** |
| Plaintiff | : | (Judge Caputo) |
| vs. | : | (Magistrate Judge Blewitt) |
| SCOTT TOWNSHIP, et al., | : | |
| Defendants | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **May 12, 2005.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *Defendant novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                                                                       s/**Thomas M. Blewitt**
                                                                                       **THOMAS M. BLEWITT**
                                                                                       **United States Magistrate Judge**

**Dated: May 12, 2005**